IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ROGER DALE SIMS                                                                    PLAINTIFF
ADC #121381

V.                                          NO. 5:04cv00224 JWC

GAYLON LAY                                                                         DEFENDANT

MEMORANDUM ORDER AND OPINION

Plaintiff, an inmate of the Cummins Unit of the Arkansas Department of Correction (ADC), brought this action alleging inadequate mental health housing and treatment, and that Cummins officials deliberately disregarded his serious medical needs by transferring him from mental health housing. Following dismissal of the action and an appeal which resulted in reinstatement of claims against Defendant Warden Gaylon Lay, Defendant Lay has filed a motion for summary judgment and brief in support (doc. 68, 69). Plaintiff has responded (doc. 73, 74, 75). Defendant has filed a reply (doc.78). Plaintiff has also filed a motion to amend (doc. 89) and a motion for preliminary injunction (doc. 90). Defendant has responded to both (doc. 91, 92, 93), and Plaintiff has replied (doc. 94, 95).

For the reasons set forth below, Defendant's motion for summary judgment is granted and Plaintiff's motions to amend and for preliminary injunction are denied.

**Procedural Background**

By memorandum order and opinion entered March 24, 2005 (*see* doc. 23), Plaintiff's case was dismissed in its entirety and judgment was entered (doc. 24).[1]

---

[1] In accordance with the Court's memorandum order and opinion entered March 24, 2005 (doc. 23) and pursuant to the order entered September 15, 2004 (doc. 11), judgment was entered without prejudice as to Defendants ADC and Luckett and with prejudice as to Defendants Lay, Hall, and Moore.

On February 2, 2007, the Eighth Circuit Court of Appeals affirmed in part and reversed in part. The Court concluded that Plaintiff's allegations against Defendants Moore and Hall (that they deliberately disregarded Plaintiff's serious medical need by deciding to move him from mental health housing and falsely attributing the decision to Plaintiff's psychiatrist) amounted to a disagreement over a treatment decision that did not rise to the level of a constitutional violation and that there was no liability on a supervisory basis.  However, the Court also concluded that Plaintiff stated a deliberate indifference claim against Warden Gaylon Lay as a policy maker.  As to this claim, the Court stated:

> We conclude, however, that Sims stated a deliberate-indifference claim against Warden Gaylon Lay as a policy maker.  Sims alleged that--through his grievances--Warden Lay knew of the Cummins Unit's constitutionally inadequate housing and staffing for mental health inmates yet failed to correct the situation. Cf. *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam) (warden's responsibility for overseeing prison operations is insufficient to establish personal involvement required to support § 1983 liability for guards' beating of inmate, but warden might be liable for policy decisions resulting in alleged unconstitutional conditions).  Sims alleged that he was unable to see a psychiatrist or psychologist when he needed to, and that insufficient housing for mental health inmates resulted in their inappropriate placement in administrative segregation and general population.  We believe that whether the housing and staffing at the Cummins Unit were adequate to meet Sims's serious mental health needs is a factual question as to which dismissal on the pleadings was inappropriate.  See *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) (medical treatment may so deviate from applicable standard of care as to show deliberate indifference, but such departure is factual question often requiring expert opinion to resolve); *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) (failure to supply medical care can constitute Eighth Amendment violation).
>
> *Sims v. Lay,* 216 Fed. Appx. 599, 2007 WL 328769 (C.A.8, 2007).

**Factual Background**

Plaintiff had resided in the Special Management Barracks (SMB) at the Cummins Unit for over a year.[2]  He claimed that former Defendant Hall, who was a counselor at the unit, ignored his mental health designation, knowingly moved him from the mental health barracks and recommended that he be placed in administrative segregation until he was transferred to the Diagnostic Unit's mental health division.  Plaintiff alleged that in both the general population and administrative segregation, a doctor was available only once every three to four months, and if a counselor was not readily available inmates might be forced to wait two to three days for a request to go through.  Plaintiff sought to hold former Defendant Moore liable on the grounds that he wrote an inter-office communication stating that Plaintiff was to be removed from the mental health barracks upon the verbal recommendation of Dr. Edwards.  Plaintiff contended that this was false.  Specifically, he said there was nothing in writing in his file concerning this verbal recommendation and when he spoke to Dr. Edwards after he was moved, Dr. Edwards allegedly had no knowledge of why the transfer had taken place.  Based on former Defendant Moore's actions, Plaintiff claimed he suffered verbal abuse and threats from the general population. He further claimed that housing mentally ill inmates in administrative segregation was cruel and unusual punishment.  Plaintiff assigned liability to former Defendant Lay because he reviewed the grievances Plaintiff filed and failed to correct the problems with the mental health staff and inadequate amount of housing for mental health inmates.  When asked

---

[2] Plaintiff claimed that he had been diagnosed by ADC doctors with major depression with psychotic features, cluster B personality traits, borderline anti-social personality disorder, and suicidal tendencies (doc. 22).

by this Court to amend his complaint to specifically state the exact nature of the injury he sustained as a result of Defendants' alleged actions (*see* doc. 5), Plaintiff claimed that he suffered mental abuse, threats, and many problems in having to live in a two-man cell in general population (*see* doc. 6).

According to Defendants, at Plaintiff's request he was assigned to the SMB on June 13, 2002, for an evaluation of his mental health needs (doc. 17). This assignment was not to be indefinite, and depended on whether he was able to make progress through medication and counseling. On September 16, 2003, Plaintiff was transferred back to general population upon the order of Dr. Peter Edwards, a psychiatrist. Plaintiff disputes that Dr. Edwards was involved in the decision to transfer. Defendants contend that Dr. Edwards found that Plaintiff was no longer a candidate for the SMB, he was responsible for his actions, and capable of functioning in the general population and earning class status. Dr. Edwards alone made this decision. Only when Plaintiff refused to relocate to general population was a disciplinary filed that resulted in his temporary assignment to administrative segregation. Most important, following his release from the SMB, Plaintiff continued to receive his medication and counseling services. He was also seen by the mental health division every time he submitted a request, albeit he may have had to wait two to three days for a request to go through. Plaintiff has previously acknowledged these facts.

**Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. *Reed v. ULS Corp.*, 178 F.3d 988, 990 (8th Cir. 1999). A moving party is entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. *Id.* at 324; Fed. R. Civ. P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. *Settle v. Ross*, 992 F.2d 162, 163-64 (8th Cir. 1993). A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment. *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994).

**Analysis - Motion for Summary Judgment**

Defendant's Lack of Authority

Defendant raises several arguments in the motion and brief for summary judgment, including sovereign immunity, lack of standing, failure to specify a constitutional violation, qualified immunity, failure to exhaust and lack of policy making authority to effect any increase in housing or staffing. The latter argument, namely that Warden Lay is not vested with responsibility or authority as a policy maker regarding housing or staffing, is dispositive.

As part of his summary judgment argument that sovereign immunity prevents recovery, Defendant correctly asserts that no damages can be entered against him in his

official capacity and goes on to say that he was and is not capable of affording Plaintiff any of the injunctive relief he seeks, including increases in mental health housing, increases in professional staffing such as psychiatrists and psychologists, or increased support staff to enhance record keeping.  To support this assertion, Defendant attached a sworn declaration of the ADC's Administrator of Mental Health, Robert A. Parker.[3]  Mr. Parker asserts that Defendant Lay has never had policy making authority with respect to staffing or hiring of mental health personnel or to provide mental health services.  All decisions as to placement or discharge from any of the mental health programs are clinical decisions and mental health services are controlled by operational policy.  Plaintiff's filings in response do not provide any evidence to the contrary.  Thus, the assertion that Lay is not a policy maker with regard to mental health services is uncontroverted.  Defendant Lay does not have authority to provide the injunctive relief Plaintiff requests.  It follows that injunctive relief cannot be granted requiring him to do so.

That leaves the issue whether Defendant Lay could be found liable for damages in his individual capacity.  Defendant does not address this issue in argument, on the mistaken assumption that he was sued in his official capacity only.  As Plaintiff correctly points out, he has specifically sued Lay in both his official and individual capacities.[4]  Nevertheless, his lack of authority prevents a finding that he was deliberately indifferent to Plaintiff's serious medical needs.  One can not be found to be deliberately indifferent for failing to take an action which he had no authority to take.  The essential element of a

---

[3]  Ex. 19 to Def.'s statement of facts (doc. 70).

[4]  *See* Pl.'s amended complaint, filed in response to the Court's direction (doc. 6).

causal connection between the failure to act and the alleged inadequacy of mental health housing and staffing is missing.  See, *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").  Defendant Lay had to work within the limitations of the system devised and administered by others.  He was neither directly nor indirectly responsible for any unconstitutional lack of mental health housing or services.

### Lack of Standing

Robert Parker's declaration speaks directly about staffing and services.  Although it impliedly includes all aspects of providing mental health services,  it does not specifically mention housing for mental health inmates.  Even if it were argued that a question remains whether Defendant Lay had authority to provide increased housing, Plaintiff lacks standing to bring a claim that mental health housing is inadequate because it has already been determined he was not personally affected by a lack of beds in the SMB.  His transfer was for other reasons.  The Eighth Circuit found that his transfer from the SMB was the result of a disagreement over treatment, and that no constitutional violation had occurred because of it.  This necessarily precludes any argument that the transfer was the result of a lack of space in the mental health barracks.  If he was not transferred because of lack of housing, he has no claim, irrespective of what the numbers of mental health inmates are in relation to the number of slots for specialized barracks.  The Eighth Circuit Court of Appeals has concluded that Plaintiff's allegations against former Defendants Moore and Hall (that they deliberately disregarded his serious medical need by deciding to move him from mental health housing and falsely attributing the decision to Plaintiff's psychiatrist)

amounted to a mere disagreement over a treatment decision that did not rise to the level of a constitutional violation (*see* doc. 32). Stated another way, Plaintiff was not moved due to a shortage in housing for mental health inmates. This is the law of the case. *See Jones v. United States*, 255 F.3d 507, 510 (8th Cir. 2001) ("All issues decided by an appellate court become the law of the case. This rule extends not only to actual holdings but also to all issues implicitly settled in prior rulings."). Whether Plaintiff has stated, or could state, a deliberate indifference claim against Defendant Lay as a policy maker (i.e., that Defendant Lay knew of the Cummins Unit's constitutionally inadequate housing and staffing for mental health inmates yet failed to correct the situation) is moot based on the Eighth Circuit's own ruling that transferring Plaintiff was not unconstitutional. This Court therefore agrees with Defendant's first contention — Plaintiff no longer has standing to bring this claim.

As with any claim in federal court, a plaintiff seeking relief under § 1983 must satisfy basic constitutional standing requirements. *Smith v. Arkansas Dep't of Corr.*, 103 F.3d 637, 643 (8th Cir. 1996). Article III of the United States Constitution requires that a "case or controversy" exist for standing to bring an action in federal court. U.S. CONST. art. III, § 2, cl. 1. For a case or controversy to exist, each individual plaintiff must suffer an "injury in fact" which is fairly traceable to the challenged action of defendants and is likely, as opposed to "merely speculative," to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In other words, the "injury in fact" test requires "that the party seeking review be himself among the injured." *Id.* at 563. A sufficient injury exists only when there is an invasion of a legally-protected interest that is "concrete and particularized" and "actual or imminent." *Id.* at 560. The rules of standing

are designed to "insure that federal courts decide only concrete cases between true adversaries and that the parties fully and adequately present all the possible issues and arguments in support of their claims." *Churchill Truck Lines, Inc. v. United States*, 533 F.2d 411, 416 (8th Cir. 1976); *see also Nat'l Fed'n of the Blind of Missouri v. Wunder*, 184 F.3d 973, 979 (8th Cir. 1999) (recognizing that a party has standing to bring a claim only if it has satisfied constitutional standing requirements <u>and</u> the court has determined as a prudential matter that the party is the appropriate proponent of the legal rights raised).

As it now stands, the Eighth Circuit has ruled that Plaintiff was transferred based on a treatment decision, not due to a shortage of mental health housing and staff. Thus, he does not have standing to bring the claim in federal court. Moreover, evidence created by Plaintiff himself clearly indicates that he did not consider his transfer from SMB to be based on a housing shortage.[5]

### Analysis - Plaintiff's Motion to Amend

Plaintiff seeks to amend to include as additional defendants Robert A. Parker (the signer of the declaration stating that he was the policy maker regarding mental health services); Dr. Peter Edwards (the psychiatrist who Plaintiff alleges was responsible for removing him from the mental health barracks); and Larry Norris (ADC Director, allegedly responsible for operation of ADC, including mental health and housing).

---

[5] *See* doc. 70, Ex. 14. "I served in 4-E as Barracks Porter for almost a year, I caused no problems and up to 9-16-03 I had never received a disciplinary, but because Mrs. Hall don't like me, the first chance she got she moved me out. I may not have a serious mental illness, but it was enough for a doctor to diagnose and give medication for. So what was the problem with me being there."

Fed. R. Civ. P. 15 (a) (2) provides that where there has been a responsive pleading filed, a party may amend its pleadings only with the opposing party's written consent or the court's leave, and further states that the court should freely give leave when justice so requires. However, under the particular circumstances of this case, the Court finds that allowing an amendment would not be in the best interests of justice.

As to Dr. Edwards, the claim against him obviously relates to Plaintiff's transfer from SMB to general population. The Eighth Circuit has concluded that the transfer was not the result of deliberate indifference, and that the claim amounted only to a disagreement over a treatment decision, not arising to the level of a constitutional violation. This would preclude a claim against Dr. Edwards arising out of the transfer. As to Mr. Parker, a claim against him would not afford complete injunctive relief because he is not responsible for hiring or staffing of psychiatrists. That responsibility is left with Correctional Medical Services, the medical provider to the ADC.

Additionally, there is a serious question whether exhaustion requirements were met as to any of these three prospective defendants. While I recognize failure to exhaust is an affirmative defense, Defendant Lay has raised it in the present case and administrative exhaustion would undoubtedly become an issue were the amendment allowed. An inmate must exhaust all available administrative remedies prior to initiating a § 1983 prison conditions suit. 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("Under the plain language of § 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is

mandatory"). The United States Supreme Court's decision in *Jones v. Bock*, 127 S. Ct. 910 (2007) challenged the "total exhaustion" rule as well as the rule requiring that every defendant to be named in a subsequent lawsuit must also be named during the grievance process. *Jones* rejected the "total exhaustion" rule requiring dismissal of the complaint as a whole, concluding instead that courts should proceed with the exhausted claims in instances where the plaintiff has failed to exhaust some, but not all, of the claims asserted. *Id.* at 924-26.

Here, the record is complete on this issue. Plaintiff filed a series of grievances,[6] but they are not sufficient to meet the requirements of the statute for the remaining claim that treatment professionals and staff are inadequate at the Cummins Unit. Although some of the grievances include a non-specific and vague statement that Plaintiff can't get help and service is "inadequate," their real thrust is that he is complaining about the fact that he had been transferred from the SMB. Defendant's position is that it was not apparent from the grievances Plaintiff filed that he was alleging a generalized or specific claim that the Cummins Unit itself offered inadequate mental health services, staffing, and record keeping. Based upon the face of the grievances and the circumstances surrounding their filing, Defendant further contends he was under the completely reasonable assumption that Plaintiff was grieving his transfer out of SMB and his denial of access to his medical file. The Court agrees with these contentions. Additionally, the grievances do not name any of the proposed defendants; Parker, Edwards or Norris. Even assuming that the regulations in effect at the time did not require each prospective defendant to be named,

---

[6] CU-03-6301, CU-03-6407, CU-03-6444, CU-03-6634,CU-04-0047, CU-04-0198, CU-04-0336. These are ex. 2 - 8 to doc.70.

the grievances were not adequate to have put those persons on notice of specific claims of a lack of psychiatrists and psychologists and a lack of sufficient support staff. The Court finds that pursuing the proposed amendments on the current state of the record would ultimately be futile for the reasons stated above and that to allow the amendments at this point would not be proper.

Plaintiff obviously feels he remains subject to an inadequate system of support. Justice would better be served by requiring him to file detailed grievances, naming those officials he now knows to be responsible, and specifically setting forth what services he personally is being denied, what problems it is causing and what he contends should be done about it. As the matter now stands, the responsible officials have not had a fair chance to consider the specific issues and to take any appropriate corrective action. The chance to do so and prevent the need for litigation is the purpose of the exhaustion requirement, and that purpose has not been met. I realize that Plaintiff considers the process to be ineffective, but nevertheless, the law requires that the step be taken.

For these reasons, the motion to amend is denied.

**Analysis - Plaintiff's Motion for Preliminary Injunction**

Plaintiff avers that the mental health unit has been moved from the Cummins Unit and that mental health services are inadequate at Cummins. He says there is not enough staff at Cummins, that there is a constant threat of physical abuse by general population inmates, and that he cannot get adequate counseling. For relief, he requests (1) transfer to the Special Problems Unit at the Diagnostic Unit, or to wherever the mental health barracks is now located; (2) transfer to Malvern Unit, "where mental health will be;" or to a maximum security unit where there are one man cells and a mental health program.

Plaintiff's transfer from mental health to general population was the result of a medical decision. Obviously, the judgment of the mental health professionals is that this was appropriate for him. The Eighth Circuit has found Plaintiff's complaint over the transfer to be a mere difference of opinion as to treatment. Plaintiff has admitted that he has received help when requested, though perhaps not at the level he would prefer. His motion is not sufficient to establish an immediate threat of irreparable harm. The Court assesses the following factors when analyzing a request for preliminary injunctive relief: (1) "the threat of irreparable harm to the movant; (2) the balance between the alleged harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981). The burden of "proving that a preliminary injunction should be issued rests entirely with the movant." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir.1995). The burden is not slight.

> [J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.... It is therefore all the more important that federal courts abstain from imposing strict standards of conduct, in the form of injunctions, on prison officials in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief.

*Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir.1982); *see also, Goff*, 60 F.3d at 520 ("[I]n the prison context, a request for injunctive relief must always be viewed with great caution"). The motion for preliminary injunction is denied.

**Conclusion**

1. Defendant's motion for summary judgment (doc. 68) is granted and the case is dismissed. This dismissal is with prejudice as to any claim arising out of Plaintiff's prior transfer to the general population or of inadequate housing for mental health inmates at the Cummins Unit of the ADC, but without prejudice as to claims arising from the present status of mental health services at the Cummins Unit of the ADC.

2. Plaintiff's motions to amend (doc. 89) and for preliminary injunctive relief (doc. 90) are denied.

IT IS SO ORDERED this 16th day of July, 2008.

_____
UNITED STATES MAGISTRATE JUDGE